IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Stephen Ray Westberry, | ) | C/A No. 0:12-588-RBH-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Lt. D. Harrouff; Sgt. Toth; and Lt. Robertson, | ) | |
| Defendants. | ) | |

The plaintiff, Stephen Ray Westberry ("Westberry"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendants' motion for summary judgment. (ECF No. 105.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Westberry was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 107.) Westberry filed a response in opposition (ECF No. 111), and the defendants replied (ECF No. 112).[1] Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

**BACKGROUND**

Westberry's Complaint raises claims of excessive force regarding a series of events that occurred within the South Carolina Department of Corrections ("SCDC") on or around January 26,

---

[1] Westberry also filed multiple sur-replies. (ECF Nos. 113, 114, 115, & 116.) The Local Rules make no provision for sur-replies. Further, under Local Civil Rule 7.07 DSC, "[r]eplies to responses are discouraged." However, even considering Westberry's sur-replies, it does not change the court's analysis of the legal issues and its recommendation to grant summary judgment.



2012 while he was housed at Perry Correctional Institution ("Perry"). According to Westberry, on that date he met with Defendant Harouff,[2] a dormitory lieutenant at Perry, regarding Westberry's missing personal property. Westberry concedes that he and Harouff "got into an argumentive conversation over ite[]ms . . . that Lt. Harouff said [were] contraband." (Compl., ECF No. 1-2 at 3.) Westberry asserts that he was told by Harouff that "[Westberry] was going to lock-up" and that Harouff then proceeded to put handcuffs on Westberry's wrists. (Id. at 3-4.) Westberry appears to allege that he was compliant with Harouff's directives, but that Harouff pretended to struggle to handcuff him. (ECF No. 1 at 2.) Westberry also alleges that Harouff then attempted to punch him but was restrained from doing so by Sgt. Cotter. Westberry further alleges that he was escorted to lock-up by Defendants Toth and Robertson, a lieutenant and sergeant respectively, who used excessive force when they pushed him and made him walk "at a fast pace," causing abrasions to his ankles from the leg irons he was wearing. (Id.) Westberry alleges that he was held in lock-up for six days because Harouff informed the guards that Westberry had assaulted him—a charge that Westberry alleges was never officially brought against him.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish

---

[2] It appears that the correct spelling of this defendant's name is "Harouff." (See Harouff Aff., ECF No. 105-3.)



the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Moreover, this court recognizes that while the determinations of credibility and the weighing of evidence are matters for the jury and not the court, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor

PJG

can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants' Motion for Summary Judgment**

    **1.     Official Capacity Claims**

To the extent that Westberry is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, the defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. See Will, 491 U.S. at 70-71. Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the defendants are sued in their official capacities, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).



### 2.     Eighth Amendment—Excessive Force

As outlined above, Westberry alleges the defendants used excessive force against him. The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Westberry must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The "'core judicial inquiry'" in an excessive force claim under the Eighth Amendment is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, "'[w]hen prison officials maliciously and sadistically use force to cause harm,' . . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9).



When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

In support of their summary judgment motion, the defendants have provided affidavit testimony from the named defendants, affidavit testimony from an SCDC officer who witnessed some of the events, and Westberry's medical records. Daniel Cotter, the Contraband Sergeant at Perry, avers that he was present during Harouff's meeting with Westberry during which time Westberry "became argumentative and was very agitated" and at one point "swiped his hand in the direction of Lt. Harouff's hand." (Cotter Aff. ¶¶ 2, 7-8, ECF No. 105-2 at 1-3.) Cotter further avers that, at first, Westberry was not physically resisting when Harouff began to handcuff him, but that



Westberry did continue to argue verbally. (Id. ¶ 9, ECF No. 105-2 at 3.) Cotter also states that he heard Harouff instruct Westberry to stop resisting and saw Harouff attempt to place Westberry, who was resisting, on the ground. (Id.) Cotter avers that at no time did he observe Harouff strike, attempt to strike, or use excessive force against Westberry. (Id. ¶ 10, ECF No. 105-2 at 3.)

Additionally, Defendant Daniel Harouff, a dorm lieutenant at Perry, provides affidavit testimony in which he states that because he and another SCDC employee were required to place hands on Westberry while restraining him, the incident was considered a "use of force" according to SCDC policy. (Harouff Aff. ¶ 10, ECF No. 105-3 at 3.) Accordingly, after Harouff was handcuffed a nurse came to check Westberry, but Harouff avers that Westberry refused medical attention and continued to curse at him. (Id., ECF No. 105-3 at 3-4; see also Medical Records, ECF No. 106 at 10.)

Thereafter, Westberry was escorted to the Special Management Unit ("SMU") by Defendants Thomas Robertson and Megan Toth, who were both assigned to SMU. (Robertson Aff. ¶ 2, ECF No. 105-4 at 1; Toth Aff. ¶ 2, ECF No. 105-5 at 1.) Both SCDC employees state in their affidavits that they "believe we were told when we arrived that [Westberry] had assaulted an officer and [Westberry] was clearly very agitated and verbally abusive toward Lt. Harouff." (Robertson Aff. ¶ 4, ECF No. 105-4 at 1; Toth Aff. ¶ 4, ECF No. 105-5 at 1.) Because of Westberry's agitated state, they aver that Westberry was escorted the approximately 400 yards to SMU in handcuffs, leg irons, and a retrieval chain. (Robertson Aff. ¶ 4-5, ECF No. 105-4 at 1-2; Toth Aff. ¶ 4, ECF No. 105-5 at 1-2.) Robertson and Toth aver that they escorted Westberry to SMU at a steady but not fast pace, and that even though Westberry continually attempted to stop and discuss what had occurred with Lt. Harouff, they required him to keep walking so that they could get him to a cell in SMU and



minimize the risk of harm to themselves and Westberry. (Robertson Aff. ¶ 2, ECF No. 105-4 at 1; Toth Aff. ¶ 5-6, ECF No. 105-5 at 2.) They further aver that Westberry did not make any complaints regarding his leg irons during the time he was being escorted, but concede that it is possible the leg irons caused abrasions near his ankles from walking. (Robertson Aff. ¶ 6, ECF No. 105-4 at 2; Toth Aff. ¶ 6, ECF No. 105-5 at 2.) They aver, however, that the leg irons were necessary in this situation due to Westberry's agitated state. (Id.)

Applying the Whitley factors to the facts viewed in the light most favorable to Westberry, the court concludes that the amount of force used was not constitutionally excessive. Importantly, Westberry acknowledges that he was upset with Harouff's decision regarding Westberry's personal property and that he got into an "argumentive conversation." (Compl., ECF No. 1-2 at 3.) Thus, even viewing the facts that are disputed in the light most favorable to Westberry, no reasonable jury could find that the defendants' perception of Westberry's behavior was unreasonable. See Whitley, 475 U.S. at 321-22. The court observes that medical personnel attempted to examine Westberry after being handcuffed by Harouff, but that Westberry refused medical attention. (Harouff Aff. ¶ 10, ECF No. 105-3 at 3-4; see Medical Records, ECF No. 106 at 10.) As to the injuries Westberry alleges he sustained while being transported to lock-up, medical records show that he was seen by medical personnel on multiple occasions following the incident during which time his abrasions were monitored and he was given antibiotic ointment and bandages. (Medical Records, ECF No. 106 at 7-9.) Accordingly, no reasonable jury could find that the defendants' use of force in handcuffing and transporting Westberry was employed wantonly, maliciously, or sadistically to inflict pain, and the defendants are therefore entitled to summary judgment on this claim. See Wilkins, 130 S. Ct. at 1178; see also Williams, 77 F.3d at 763.

C.   **Other Claims**

To the extent that Westberry is challenging his placement in segregation for approximately six days, he has no cognizable claim relating to his placement or custody level in SCDC. McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"). South Carolina law confers no protected liberty interest upon inmates of the SCDC from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. See, e.g., Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992) (citing Meachum v. Fano, 427 U.S. 215 (1976)).

To the extent Westberry is attempting to assert a claim against the any member of the medical staff for deliberate indifference, the court observes that these individuals are not defendants in this matter. To the extent Westberry is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

### RECOMMENDATION

For the above reasons, the court recommends that the defendants' motion for summary judgment be granted. In light of this recommendation, the court further recommends that Westberry's remaining motions (ECF Nos. 125, 128, & 131) be terminated as moot.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 12, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).